**EXHIBIT 1**

MYRTLE HALL, PLAINTIFF
MISCHELLE HENRY, PLAINTIFF
41 COVENT AVENUE
NEW YORK, NY 10027
(480)254-4258
Email: hawaiilgcfinc@gmail.com

**12 CV 7214**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MYRTLE HALL, a single woman, <br><br> MISCHELLE HENRY, a married woman <br><br> Plaintiff, <br><br> vs. <br> WELLS FARGO BANK N.A., a National Bank; <br> FREDDIE MAC, a Virginia corporation; <br> TIFFANY & BOSCO, P.A. a Professional Association <br><br> Defendant(s) | CASE NO: <br><br> VERFIED COMPLAINT FOR DAMAGES: <br> **VIOLATION OF FAIR DEBT** <br> **COLLECTION PRACTICES ACT;** <br> **ACTION TO QUIET TITLE** <br><br> JURY TRIAL DEMANDED |

**COMES NOW**, the Plaintiffs Mischelle Henry and Myrtle Hall (Plaintiffs) complaining of the defendants and each of them as follows:

## INTRODUCTION

1. This action is an action brought by Plaintiffs for declaratory judgment, injunctive and equitable relief, and for compensator, special, general and punitive damaged.

2. Plaintiffs disputes the title and ownership of the real property in question located at 5044 W. Chicago Circle South, Chandler Arizona 85226, as more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (the "Property"), which is the subject of this action. Third party debt collectors, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and

Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in the Property which is described in detail herein.

3. Plaintiff Myrtle Hall alleges that she owns the Property in fee simple, with all rights and appurtenances thereto, and free of any claims or encumbrances alleged by Defendants.

4. Plaintiff Myrtle Hall allege that Defendant Wells Fargo and Freddie Mac cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the subject property, including the Promissory Note, Deed of Trust, resulting in imperfect security interest and claims.

5. Plaintiffs further allege that Defendants, and each of them, cannot establish possession and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have a perfected claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

6. Plaintiffs allege that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff's desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

7. Plaintiff's claims defendants are liable for violation of the Fair Debt Collection Practices Act.

8. Plaintiffs also seek redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

a. An invalid and unperfected security interest in Plaintiffs Property hereinafter described;

b. An incomplete and ineffectual perfection of a security interest in Plaintiff's Property;

c. A void or voidable Deed of Trust, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

## THE PARTIES

9. Plaintiff "**MISCHELLE HENRY**" is now and at all times relevant to this action, a resident of Arizona.

10. Plaintiff "**MYRTLE HALL**" is now and at all times relevant to this action, resident, and domiciles in the County of New York, State of New York.

11. Defendant "**WELLS FARGO BANK N.A.**", ("WF") is a national bank licensed to do business in the State of New York and Arizona. WF claims an interest in Plaintiff property as a beneficiary, and alleged creditor.

12. Defendant "**FREDDIE MAC**" (hereinafter" FM") is a government entity and a Virginia corporation. FM claims an interest in Plaintiff property as a beneficiary, and alleged creditor.

13. Defendant "**TIFFANY & BOSCO P.A.**, (hereinafter "TB") is an Arizona Professional corporation. TB claims to be a Trustee and servicer of the alleged creditor Wells Fargo Bank N.A.

14. At all times relevant to this action, Plaintiff Myrtle Hall is the current title owner of the subject Property located at 5044 W. Chicago Circle South (the "Property").

15. Plaintiffs are unaware of the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and

damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

16. Plaintiffs is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## JURISDICTION

17. The US District Court has jurisdiction pursuant to 28 USC§ ¶1332, ¶1331.

18. This court has jurisdiction pursuant to 28 USC§ 1441, where the amount in controversy exceeds $75,000.

## FACTUAL ALLEGATIONS
## (PLAINTIFF MISCHELLE HENRY)

19. Plaintiff Mischelle Henry executed a series of documents, including but not limited to a Note and Deed of Trust a true correct copy attached hereto as *Exhibit A*, securing the Property in the amount of note.

20. Plaintiff Mischelle Henry informed and believes, and thereon alleges, that they entered into a mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiff in favor of the original lender under a trade name of Deines McCutcheon Mortgage Inc, whose is wholly owned by Major Mortgage Inc. The transaction was executed on March 22, 2005, specific to Loan Number 0197249238.

21. Plaintiff Mischelle Henry on or about November 2008 learned that the original alleged original lender Deines Mccutcheon Mortgage (trade name) failed to exist as corporation. Plaintiff Mischelle Henry was never notified in compliance

with the Deed of Trust. In light of this payments were unable able to be made as no creditor was present stating a claim.

22. On or about June 6, 2011 Plaintiff Mischelle Henry filed a voluntary Chapter 7 bankruptcy, which she obtained a discharge on or about September 2011. Therefore Plaintiff Mischelle Henry cancelled her obligation to pay on the subject debt.

23. On or about August 8, 2011 caused to be filed an Assignment of Deed of Trust see a true and correct copy attached hereto as *__Exhibit B__* , assigning the Deed only (not the Note) to defendant WF. The proffered assignment of the Deed only creates no such obligation of Plaintiff to the defendant. Notwithstanding it goes to prove that defendants "WF", neither "FM" is and, never has been a note holder owner, note owner, entitled to any claim thereof. Further the assignment is materially defective as at the time of its filing the original Lender ceased to exist. Therefore written permission pursuant to the Deed of Trust, from the original lender to MERS to act (Section 22, Non Uniform Covenants) could not have occurred. Therefore a claim by any of the defendants against the property is void and without merit.

24. Further the assignment fails miserably in that is states valuable consideration was given to defendant "WF" for the Deed, when the Deed itself lacks any value without the Note together. Defendant WF as well could not have "negotiated" this transaction since the original lender failed to exist at the time of its self-creation.

25. MERS had no authority to assign the Deed of Trust as nominee of Deines Mccutcheon Mortgage Inc, as at the time this entity was a dead entity (insolvent). Notwithstanding, the assignment transferred only the debt obligation which was discharged by Plaintiff Mischelle Henry bankruptcy discharge. Most importantly the Note was not negotiated, therefore neither defendant can make claim to it.

26. On or about July 10, 2011 Plaintiff Mischelle Henry negotiated a sale of the property for valuable consideration received, thereby transferring all her interest, title, equity, and rights in said property to Plaintiff Myrtle Hall.

27. On or about June 19, 2012 Plaintiff Mischelle Henry received a letter from defendant T&B titled Notice of Trustee Sale, a true and correct copy is attached hereto as ***Exhibit C***. The notice from defendant T&B states among other causes, that a Trustee sale will be conducted on the subject property (now owned by Plaintiff Myrtle Hall) on or about September 28, 2012.

28. On or about June 19, 2012 Plaintiff Mischelle Henry received yet another notice styled Substitution of Trustee, a true and correct copy is hereto attached as ***Exhibit D.*** The document from defendants Tiffany & Bosco and Mark A. Bosco Jr, claims Mark A. Bosco Jr., has been substituted as an alleged Trustee pursuant to the Deed of Trust. Mark A. This notice contains materially false and defective information as Mark A. Bosco could not be a Trustee pursuant to the Deed of Trust. Further no agency exists between Mark A. Bosco, and the unknown principle, as defendant "WF" (neither FM) is not the creditor subject to any claim. No contractual obligation exists between Plaintiff Mischelle Henry and defendants Tiffany & Bosco and defendant Mark A. Bosco Jr.

29. On or about July 5, 2012 Plaintiff Mischelle Henry received a notice from defendant FM, a true and correct copy is attached hereto as ***Exhibit E***. The notice from defendant "FM" among other things state that it is the current owner of the subject mortgage. It further states that defendant "WF" is the current servicer. This notice is in severe contradiction of all the defendants various legal filings, recorded documents, and multiple notices to Plaintiff Mischelle Henry. As this notice implies that defendant "FM" is the alleged creditor and not defendant "WF" as stated in recent notices sent to Plaintiff.

30. There is no evidence that defendant "FM" has any documented interest in the subject property. There is no contractual obligation between defendant "FM" and the Plaintiff Mischelle Henry. Further, defendant "FM" claim and allegation as owner of the subject property, mortgage and Note is without merit and most importantly in contradiction of defendants "WF" claim of being the creditor and principle.

31. On or about July 5, 2012 Plaintiff Mischelle Henry received a notice from defendant Tiffany & Bosco PA, a true and correct copy is attached hereto as *Exhibit F*. The letter informs Plaintiff among other things that defendant "WF" is the current creditor and servicer of the subject property, further states amount due them is $127,743.48.

32. On the bottom of the letter there reads a paragraph as follows:

" This firm is not a Debt Collector as that term is defined pursuant to the Fair Debt Collection Practices Act within this jurisdiction (see Mansour vs. Cal-Western Reconveyance Corp, 618 F. Supp. 2d 1178D. Arizona 2009."

## FACTUAL ALLEGATIONS
### (PLAINTIFF MYRTLE HALL)

33. On or about July 5, 2012 Plaintiff Myrtle Hall received a notice from Defendants Tiffany & Bosco a true and true correct copy is attached hereto as *Exhibit G*. Plaintiff Myrtle Hall is the current owner of the subject property located at 5044 W. Chicago Circle South.

34. Plaintiff Myrtle Hall is a "consumer" as defined by 15 U.S.C.§1692, the Fair Debt Collection Practices Act.

35. Defendant TB upon information and belief may be considered a "debt collector" as defined by 15 U.S.C.§1692.

36. The FDCPA defines a "debt" any obligation or alleged obligation of a consumer to pay money arising out a transaction in which the money, property,

insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes. (15 USC 1692a(5).

37. Defendant TB notice to Plaintiff Myrtle Hall contained materially false information stating that defendant "WF" was the beneficiary to whom the debt is owed. The letter further states that defendant "WF" is the servicer of the subject debt.

38. Plaintiff Myrtle Hall claims the fact that defendant FM claims to be the true creditor and owner of the same debt, there appears to be obvious contradiction of ownership. In light of this fact, it appears that either defendant Tiffany & Bosco is making a false claim, or defendant "FM" claims are false.

39. Plaintiff Myrtle Hall the current owner of the property makes her claim the defendant TB has violated the Fair Debt Collections Practices Act, by using false and misleading information contained in the notice sent by defendant. Plaintiff Myrtle Hall also claims that due to the dual claim of ownership of defendants WF and T&B, (see, Exhibits E, F) she cannot be determined as to whom the debt is owed. Therefore Plaintiff is unable to satisfy any possible alleged claims against her property.

## FIRST CAUSE OF ACTION
## QUIET TITLE
### (DEFENDANTS WELLS FARGO, FREDDIE MAC, DOES 1-100)

40. Plaintiff Myrtle Hall re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

41. Plaintiff is credibly informed and believes that Defendants claim an interest or interests in the Property that are adverse to Plaintiff's fee simple title to the Property.

42. Plaintiff is entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of the Property and quieting

Plaintiff's title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem valid and avoiding any liens or encumbrances upon the Property created by Defendants or by their putative predecessors, or by any of them.

43. Plaintiffs desires and is entitled to a judicial declaration quieting title in Plaintiffs as of the date on which is loan transaction was consummated.

44. Plaintiffs verifies the truth of the allegations contained herein for the purpose of complying with the requirement set forth in ARS §12-1102 that a Complaint for Quiet Title be given under oath. Plaintiff's Myrtle Hall Verification Under Oath is attached hereto and by this reference made a part of this Complaint.

45. Plaintiff's moves this court to require the defendant to provide the genuine, original Note and a clear chain of title to the Plaintiff as proof that is it the true party to which the debt is owed, so that Plaintiff could satisfy and or tender any alleged payment due, and or satisfy the debt if any.

## SECOND CAUSE OF ACTION
## VIOLATION OF 15 U.S.C.§1641(g) TRUTH IN LENDING ACT
### (DEFENDANTS WELLS FARGO, FREDDIE MAC)

46. Plaintiff Mischelle Henry re-allege the allegations above as if fully set out herein.

47. With respect to Plaintiff Mischelle Henry defendant "WF" alleges to have received by assignment a beneficial interest in their mortgage and note. Defendant WF alleges it is a creditor within the meaning of 15 U.S.C. §1641(g).

48. Defendant "FM' alleges it is a "creditor" within the meaning of 15 U.S.C. §1641(g).

49. Said mortgage secures an interest in real estate which is used by Plaintiff as their principle dwelling, such transfer, within 30 days, and make all the disclosures set out above.

50.  Defendant FM failed to notify Plaintiffs at all and therefore failed to make the requisite disclosures.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FAIR DEBT CREDIT PRACTICES ACT
## (ALL DEFENDANTS)

51. Plaintiffs Mischelle Henry and Plaintiff Myrtle Hall claims all defendants are liable to Plaintiffs for violation of 15 U.S.C.1692, specifically 15 U.S.C.1692e. Defendant's use of false, deceptive, or misleading representation with the collection of any debt.

52.  Plaintiff's claims all defendants are liable to Plaintiffs for violation of 15 USC§1692e(4) which prohibits  debt collectors from making false representation "that nonpayment of any debt will result in the seizure of any property unless such action is lawful.

53.  All Defendants engaged in the collection of debts from consumers using the mail and telephone. Defendants regularly attempts to collect consumer debts alleged to be due to another. Defendants is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6). Defendants violated the FDCPA. Defendant's violations include, but are not limited to the following;

    a.  Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt and;

    b.  Defendant violated §1692(d)(5) of the FDCPA by causing a telephone to ring engaging any person in telephone conversation repeatedly and/or continuously with the intent to annoy, abuse or harass any person at the called number and;

c. Defendant violated §1692(j) of the FDCPA by using unfair or unconscionably means in connection with the collection of an alleged debt;

d. Defendant violated 1692(e) using false, deceptive, or misleading misrepresentations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e, and;

e. using unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. §1692f;

f. Defendant violated the 1692(e)(8) requires debt collectors to communicate the disputed status of a debt if the debt collector 'knows or should know' that the debt is disputed, standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is "acquired."

54. Defendant's acts as described above were done intentionally with the purpose of coercing the Plaintiffs to pay the alleged debt.

55. As a result of the foregoing violations of the FDCPA, Defendants, and each of them are liable to the Plaintiffs Mischelle Henry and Myrtle Hall, for declaratory judgment that Defendant's conduct violated the FDCPA, actual damages, statutory damages, and costs and fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests the following relief to be awarded for each Cause of Action:

1. That this Court establish Plaintiff Myrtle Hall estate in fee simple in the Property and that Defendants Wells Fargo and Freddie Mac be barred and forever estopped from having or claiming any right or title to the Property adverse to Plaintiff;

2. For Declaratory Relief, including the following Decrees of this Court that:

    a. Plaintiff is the prevailing party;

    b. The Mortgage Originator has no enforceable secured or unsecured claim against the Property; and for an Order Quieting Title;

    c. For judgment for statutory damages, costs and fees pursuant to 15 U.S.C.§1641(a);

    d. For Declaratory judgment that Defendant's conduct violated the FDCPA;

    e. Actual damages in an amount determined at trial;

    f. Punitive damaged in an amount determined at trial;

    g. statutory damages of $1000.00 per violation of law pursuant to 15 U.S.C. §1692k.

    h. costs and fees pursuant to 15 U.S.C. §1692k.

    i. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law.

SUCH OTHER RELIEF AS THIS COURT MAY DEEM APPROPRIATE.

## VERIFICATION

We Myrtle Hall and Mischelle Henry, declare as follows:

1. We are the Plaintiff in the above action;

2. We have personal knowledge of all matters regarding this case, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. We verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning and its planned activity are true and correct.

Executed: Sept 21, 2012.


Mischelle Henry, Plaintiff

Myrtle Hall, Plaintiff
41 COVENT AVENUE
NEW YORK, NY 10027

VERIFIED COMPLAINT FOR DAMAGES

# EXHIBIT A
## DEED OF TRUST

Return To:
Deines McCutcheon Mortgage, Inc (fn)

401 West Baseline Road, Suite 103
Tempe, AZ 85283
888-589-9500

**Unofficial**
20 **Document**

14
Le

Prepared By:
Steve Robedeau
401 West Baseline Road, Suite 103
Tempe, AZ 85283
888-589-9500

---[Space Above This Line For Recording Data]---

0001611903

1426755-29  DEED OF TRUST

MIN 100049200000088119

**COMMONWEALTH TITLE**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    March 22nd, 2005
together with all Riders to this document.
(B) "Borrower" is  Mischelle K Henry,  unmarried

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
5044 West Chicago Circle South, Chandler, AZ 85226
(C) "Lender" is  Deines McCutcheon Mortgage, Inc (fn)

Lender is a  Wyoming Corporation
organized and existing under the laws of    The State of Wyoming

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3003  1/01 (rev. 6/02)

-6A(AZ) (0205)
Page 1 of 16                      Initials: _McH_

VMP MORTGAGE FORMS - (800)521-7291

20050377272

Lender's mailing address is 401 West Baseline Road, Suite 103, Tempe, AZ 85283

(D) "Trustee" is   Arizona Trust Deed Corporation
. Trustee's mailing address is

P.O. Box 29542, Phoenix, AZ 85038

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   March 22nd, 2005
. The Note states that Borrower owes Lender  One Hundred Thirty Two Thousand Three
Hundred and  no/100.                                                            Dollars
(U.S. $   132,300.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   April 1st, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

Unofficial Document

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

⬯ -6A(AZ) (0208)                     Page 2 of 16                 Initials: _MAf_   Form 3003  1/01  (rev. 6/02)

VERIFIED COMPLAINT FOR DAMAGES

- 15-

20050377272

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    County     of     Maricopa    ;
  [Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

Lot 339, TWELVE OAKS II, according to Book 287 of Maps, page 43, records of Maricopa County, Arizona.

Unofficial Document

| | | |
|---|---|---|
| Parcel ID Number: | 301-88-634 | which currently has the address of |
| | 5044 West Chicago Circle South | [Street] |
| | Chandler | [City], Arizona 85226 [Zip Code] |

("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

  THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

-6A(AZ) (0200)      Page 3 of 15   Initials: MCA  Form 3003 1/01 (rev. 6/02)

20050377272

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(AZ) (1205)                    Page 4 of 15          Initials: _MAt_          Form 3003   1/01 (rev. 6/02)

20050377272

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: _MW_

-6A(AZ) (0103)          Page 5 of 15          Form 3003  1/01  (rev. 6/02)

VERIFIED COMPLAINT FOR DAMAGES

-18-

20050377272

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(AZ) (0208)                    Page 6 of 15            Initials: _MCH_   Form 3003  1/01  (rev. 6/02)

20050377272

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(AZ) (0209)                          Page 7 of 16                    Initials: _____   Form 3003  1/01 (rev. 6/02)

VERIFIED COMPLAINT FOR DAMAGES

20050377272

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(AZ) (0305)                                    Page 8 of 16                          Initials: _____    Form 3003   1/01   (rev. 6/02)

20050377272

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _MCH_

-6A(AZ) (0200)                    Page 9 of 16                    Form 3003   1/01   (rev. 6/02)

20050377272

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _MCH_

-6A(AZ) (0200)                 Page 10 of 16                 Form 3003  1/01  (rev. 6/02)

VERIFIED COMPLAINT FOR DAMAGES

20050377272

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale~~~~~~~~~~ perty pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(AZ) (0208)                    Page 11 of 15          Initials: _____    Form 3003   1/01 (rev. 6/02)

20050377272

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(AZ) (0200)                    Page 12 of 16        Initials: _MCH_      Form 3003  1/01  (rev. 6/02)

VERIFIED COMPLAINT FOR DAMAGES

-25-

20050377272

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale.  Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  Substitute Trustee.  Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25.  Time of Essence.  Time is of the essence in each covenant of this Security Instrument.

Initials: _MCH_   Form 3003   1/01   (rev. 6/02)

-6A(AZ) (0205)                    Page 13 of 13

20050377272

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _Mischelle K. Henry_____ (Seal)
                                  Mischelle K Henry          -Borrower

_____        _____ (Seal)
                                                            -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                   -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                   -Borrower

_____ (Seal)      _____ (Seal)
                -Borrower                                   -Borrower

-6A(AZ) (0205)          Page 14 of 15          Form 3003   1/01 (rev. 5/02)

20050377272

STATE OF ARIZONA,              Maricopa           County ss:

The foregoing instrument was acknowledged before me this
by  Mischelle K Henry                          March 23nd, 2005

My Commission Expires:  April 2, 2005

Notary Public

Thomas Polcher
Notary Public - Arizona
Maricopa County
My Commission Expires
April 2, 2005

Unofficial Document

-8A(AZ) (0208)                    Page 15 of 16            Initials: _____  Form 3803   1/01  (rev. 6/02)

VERIFIED COMPLAINT FOR DAMAGES

- 28-

20050377272

# PLANNED UNIT DEVELOPMENT RIDER

0001611903

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        22nd        day of
March 2005                          , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
Deines McCutcheon Mortgage, Inc (fn)

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

5044 West Chicago Circle South, Chandler, AZ  85226
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in  Declaration of
Covenants, Conditions and, Restrictions of Record.

(the "Declaration"). The Property is a part of a planned unit development known as
Twelve Oaks
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3150 1/01
                                    Page 1 of 3                     Initials: _____
-7R (0008)                VMP MORTGAGE FORMS - (800)521-7291

20050377272

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-7R (0008)                          Page 2 of 3          Initials: _NAL_          Form 3150 1/01

20050377272

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Mischelle K Henry              -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower

Unofficial Document

_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower

-7R (0008)                     Page 3 of 3                     Form 3150 1/01

# EXHIBIT B
## ASSIGNMENT

# Unofficial Document

Document drafted and prepared by
and when recorded, return to:

Wells Fargo Home Mortgage
Shoua Thao, x9999-018
PO Box 1629
Minneapolis, MN 55440-9790

MIN: 100049200000088119
Phone: 1-888-679-6377

MARICOPA COUNTY RECORDER
HELEN PURCELL
2011-0678671 08/15/11 01:28 PM
10 OF 10

_____ (Space above this line for recorder use only)_____

**ASSIGNMENT OF DEED OF TRUST**

For value received, Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for Deines McCutcheon Mortgage, Inc (fin), its successors and assigns, whose address is PO Box 2026, Flint, MI  48501-2026, the undersigned hereby grants, assigns and transfers to:

**Wells Fargo Bank, NA**
1 Home Campus, Des Moines, IA 50328

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust, herein "Security Instrument" executed by Mischelle K Henry, unmarried, dated March 22, 2005, in the amount of $132,900.00 and given to Mortgage Electronic Registration Systems, Inc., as nominee for Deines McCutcheon Mortgage, Inc (fin)/Trustee: Arizona Trust Deed Corporation and recorded on March, 28, 2005 as Document or Instrument Number 20050377272 and/or in Book N/A, Page N/A, of Official Records in the County Recorder's office of Maricopa County, Arizona, describing land therein as:

Property Address:          5044 West Chicago Circle South, Chandler, Arizona 85226
Parcel ID #:               301-88-634
Legal Description:         See Attached
Signed this  8-10-11 .

Mortgage Electronic Registration Systems, Inc.

_____
**John Kealy**
Assistant Secretary

**ARIZONA ALL PURPOSE NOTARY ACKNOWLEDGEMENT**

STATE OF MINNESOTA          )
                            )
COUNTY OF DAKOTA            )

On this  08/10/2011 , before me,  Steven F Schmidt , personally appeared  John Kealy , Assistant Secretary, Mortgage Electronic Registration Systems, Inc.,
☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary:  Steven F Schmidt

STEVEN T SCHMIDT
Notary Public
Minnesota
My Commission Expires Jan. 31, 2014

Page 1 of 2

VERIFIED COMPLAINT FOR DAMAGES

EXHIBIT C
NOTICE OF TRUSTEE SALE

WHEN RECORDED MAIL TO:

TIFFANY & BOSCO, P.A.
Michael A. Bosco, Jr.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016

RECORDED

FHLMC
Title No: 21115602
FHA/VA No.:

## NOTICE OF TRUSTEE'S SALE
### File I.D. #11-44431 Henry

Notice is hereby given that Michael A. Bosco, Jr., Attorney at Law, as trustee or successor trustee or substituted trustee, pursuant to the Deed of Trust which had as original balance of $135,000.00 executed by Mischelle K. Henry, unmarried, 5044 West Chicago Circle South, Chandler, AZ 85226, dated March 22, 2005 and recorded on 03/28/2005 as Instrument No. 2005-0377272 in Book, Page, of the Official Records of Maricopa County, AZ, will sell the real property described herein by public auction on September 28, 2012 at 10:00 A.M. at the office of Michael A. Bosco, Jr., 2525 East Camelback Street, Suite 300, in the City of Phoenix, County of Maricopa, State of Arizona, to the highest bidder for cash (in the forms which are lawful tender in the United States and acceptable to the trustee, payable in accordance with ARS 33-811A), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described as:

Lot 339, TWELVE OAKS II, according to Book 287 of Maps, Page 43, records of Maricopa County, Arizona.

The street address/location of the real property described above is purported to be:

    5044 West Chicago Circle South
    Chandler, AZ  85226
    Tax Parcel No.: 301-38-634

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown herein.

The beneficiary under the aforementioned Deed of Trust has accelerated the Note secured thereby and has declared the entire unpaid principal balance, as well as any and all other amounts due in connection with said Note and/or Deed of Trust, immediately due and payable.

*(Notice of Sale continued following page ..........)*

VERIFIED COMPLAINT FOR DAMAGES

-35-

Page 2 of Notice of Trustee's Sale
File ID: 11-44431 Henry

Said sale will be made in an "as is" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal balance of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Current Beneficiary:
    Wells Fargo Bank, N.A.
Care of / Servicer
    Wells Fargo Home Mortgage Inc
    3476  Stateview  Boulevard,  MAC
#X7801-014
    Fort Mill, SC 29715

STATE OF ARIZONA
COUNTY OF MARICOPA

On this 28 day of June, 2012 before me, Mary P. Dobos a Notary Public for said State, personally appeared Michael A. Bosco, Jr. personally known to me be (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

OFFICIAL SEAL
MARY P. DOBOS
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Oct. 22, 2014

Mary P. Dobos Notary Public
Commission expiration of 10/22/2014

This firm is not a Debt Collector as that term is defined pursuant to the Fair Debt Collection Practices Act and the decisions interpreting it. Marsaw vs. Cal-Western Reconveyance Corp., 618 F.Supp.2d 1178 (D. Ariz. 2009). Should a subsequent determination be made that this firm is a Debt Collector as that term is defined within the Act, then please be advised that any information obtained will be used for the purpose of collecting a debt. Please be advised that if your personal liability for this debt has been extinguished or discharged in a bankruptcy, this communication is provided solely to enforce the security interest or the lien of your mortgage or trust deed and is an attempt to collect the discharged personal obligation. The information provided herein can not be used to secure lien for any amount upon the subject property.

NOTICE: If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the monies paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

VERIFIED COMPLAINT FOR DAMAGES

"EXHIBIT A"

NOTICE OF STATEMENT OF BREACH OR NON-PERFORMANCE
FILE NO: 11-44431 Henry

A breach or non-performance of the Deed of Trust referred to in the attached Notice of Trustee's Sale (which Deed of Trust is dated 03/22/2005 and recorded on 03/28/2005 as Instrument No. 2005-43___ (or Book, Page) of the Official Records of Maricopa County, AZ), or of the promissory note secured thereby, or both, has occured by reason of the following:

Failure to make the monthly payments of $999.47 each, from 06/01/11 and all subsequent installments

PLUS ALL ACCRUING PAYMENTS, LATE CHARGES, ADVANCES, TAXES, RENTS, PAYMENTS ON PRIOR LIENS, FEES, COSTS, INTEREST, EXPENSES, AND ANY OTHER DEFAULT THAT MAY OCCUR, ETC.

The Beneficiary under said Deed of Trust has accelerated the Note secured thereby and has declared the entire unpaid principal balance, as well as any and all other amounts due in connection with said Note/Deed of Trust, immediately due and payable. The beneficiary has elected to sell, or cause to be sold, the property described in the Notice of Trustee's Sale.

All persons whose interest in the trust property is subordinate in priority to that of the above referenced Deed of Trust are hereby advised that their INTEREST MAY BE TERMINATED BY THE TRUSTEE'S SALE.

Wells Fargo Bank, N.A.

By: Michael A. Bosco, Jr., as Trustee and
Beneficiary's Agent

Loan No.: 0197249238

# EXHIBIT D
## SUBSTITUTION OF TRUSTEE

WHEN RECORDED MAIL TO:

Tiffany & Bosco, P.A.
Michael A. Bosco, Jr.
2525 E. Camelback Rd.
Ste. 300
Phoenix, AZ 85016

RECORDED

## SUBSTITUTION OF TRUSTEE
11-44431 Henry

WHEREAS, Michelle K. Henry, unmarried was the original Trustee(s) default Trust Deed Corporation was the original Trustee and  Mortgage Electronic Registration Systems, Inc., as nominee for Deines McCutcheon Mortgage, Inc. (FN), as successors and assigns was the original Beneficiary under that certain Deed of Trust dated 03/23/05 and recorded on 03/25/2005 in Instrument No. 2005-0377272 (or Book, Page) of the Official Records of Maricopa County, AZ and described as:

Lot 339, TWELVE OAKS II, according to Book 287 of Maps, Page 47, records of Maricopa County, Arizona.

WHEREAS, the undersigned present beneficiary under the said Deed of Trust hereby appoints Michael A. Bosco, Jr., whose address is 2525 East Camelback Road, Suite 300, Phoenix, Arizona 85016, as Successor Trustee under said Deed of Trust, and is qualified to act as Successor Trustee per ARS Section 33-803 (A)2, as a member of the Arizona State Bar.

Wells Fargo Bank, N.A.

By: Mark S. Bosco, Attorney at Law
Its Limited Power of Attorney

State of Arizona)

County of Maricopa)

On June 28, 20 12 before me, Mindy M. Horsley a Notary Public for and State personally appeared Mark S. Bosco personally known to me to be (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Mindy M. Horsley
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
October 22, 2014

WITNESS my hand and official seal.

Signature

# EXHIBIT E
# DEFENDANT FREDDIE MAC NOTICE TO MISCHELLE HENRY



July 5, 2012

M HENRY
5044 W CHICAGO CIRCLE SOUTH
CHANDLER, AZ 85226

RE: Your Mortgage Loan #: 197249228

Dear Homeowner:

At Freddie Mac, we help make homeownership a reality for 50,000 people each year. But our commitment to homeownership doesn't end with the purchase of a house. We're also committed to helping you keep your home and protect that investment.

Freddie Mac is the owner of your mortgage, and WELLS FARGO BANK, N.A. services the mortgage on our behalf. They have notified us that your mortgage payment has recently been delinquent, and our experience shows us that many foreclosures can be avoided if homeowners act quickly.

On our website, you can find information about the options that may be available to help you. Type the address below into your browser:

http://www.freddiemac.com/avoidforeclosure

In addition, we'd like you to know that there are two foreclosure prevention events going on in your area:

- The Freddie Mac Borrower Help Centers and the Arizona Foreclosure Prevention Task Force are hosting a Home Rescue Clinic in Tempe on Saturday, July 14.

- The U.S. Department of the Treasury and the HOPE NOW Alliance are hosting a foreclosure prevention event in Phoenix on Thursday, July 19.

These events are FREE and available to you. Please see the enclosed flyers for details about the events.

If your mortgage servicer is at the event, they will be a unique opportunity for you to meet with them face-to-face and talk about your situation so you should register at the event to see them.

If your mortgage servicer is not at the event, additional resources such as non-profit housing counseling organizations and State and Local services may be available to assist you.

Please bring this letter with you to the event.

Sincerely,

*Freddie Mac Borrower Outreach*

**Beware of third parties who offer to help you avoid foreclosure by charging you a fee because they may be scammers. Report suspected scammers by phone at 1-888-995-HOPE or online at http://tcintake.sigtarp.gov/fraud-report.aspx?source=Freddie.**

Notice to any recipient who has (a) filed bankruptcy or (b) received a discharge in bankruptcy. Please understand that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof, who may have received a discharge of such debt in accordance with the Bankruptcy Code or who might be subject to the automatic stay of section 362 of the Bankruptcy Code.

VERIFIED COMPLAINT FOR DAMAGES

# EXHIBIT F
## DEFENDANT TB NOTICE TO MISCHELLE HENRY

**TIFFANY & BOSCO**
P.A.

2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192

Financial Services Department
(602) 255-6035

July 5, 2012

Mischelle K. Henry
5044 W Chicago Circle South
Chandler, AZ 85226

RE:   Loan No.:        0197249238
      Our File No.:    11-04437
      Prop. Address:   5044 West Chicago Circle South
                       Chandler, AZ 85226

This firm has been retained to enforce the terms of the above referenced loan by non-judicial foreclosure.

1.  The good faith estimate of the debt owed is $127,743.48 plus those charges that continue to accrue interest as well as such as interest, late charges, advances, expenses of collection, and attorney's fees incurred during the foreclosure of all these amounts computed through a specified date, you may request such document through our office.

    The arrearage amount is the sum of payments that have come due on and after the date of default plus late charges, periodic adjustments to the payment amount, expenses of collection, and attorney's fees and is further described in the Statement of Breach or Non-Performance attached to the Notice of Trustee's Sale.

2.  The creditor (current beneficiary) to whom the debt is owed is:  Wells Fargo Bank, N.A.

    The loan servicer is:  Wells Fargo Home Mortgage Inc.

3.  This firm will assume the debt to be valid unless you, within thirty days after receipt of this notice, dispute the validity of the debt or a portion thereof. If you notify this firm in writing within the thirty day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Also, upon your written request within the thirty day period, this firm will provide you with the name and address of the original creditor, if it is different from the current creditor.

This firm is not a Debt Collector as that term is defined pursuant to the Fair Debt Collection Practices Act, and this jurisdiction (see Mansour vs. Cal-Western Reconveyance Corp., 618 F.Supp.2d 1178) and, since there has been no determination be made that this firm is a Debt Collector as that term is defined within the Act, then you are advised that any information obtained will be used for the purpose of collecting a debt. Please be advised that if your obligation for this debt has been modified or extinguished by a discharge in bankruptcy, this communication is provided only to comply with the foreclose on the deed of trust remaining on your property and is not an attempt to collect the discharged personal obligation. The notifications provided herein do not limit or detract from the rights of the creditor under the subject obligation.

TIFFANY & BOSCO, P.A.
Financial Services Department
(602) 255-6035

# EXHIBIT G
## DEFENDANT TB NOTICE TO MYRTLE HALL

**TIFFANY & BOSCO**
P.A.
2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE (602) 255-6000
FACSIMILE (602) 255-0103

Financial Services Department
(602) 255-6035

July 5, 2012

Myrtle Hall
5044 West Chicago Circle South
Chandler, AZ 85226

RE:    Loan No.:       0197549239
       Our File No.:   11-44431
       Prop. Address:  5044 West Chicago Circle South
                       Chandler, AZ 85226

This firm has been retained to enforce the terms of the above referenced note by non-judicial foreclosure.

1. The good faith estimate of the debt owed is $187,543.48 plus those charges that continue to accrue under the loan documents such as interest, late charges, advances, expenses of collection, and attorney's fees and costs. Because of all these amounts computed through a specified date, you may request such statement through this office.

The arrearage amount is the sum of payments that have come due on and after the date of default plus all late charges, periodic adjustments to the payment amount, expenses of collection, and attorney's fees as further described in the Statement of Breach or Non-Performance attached to the Notice of Trustee's Sale.

2. The creditor (current beneficiary) to whom the debt is owed is: Wells Fargo Bank, N.A.

The loan servicer is: Wells Fargo Home Mortgage Inc.

3. This firm will assume the debt to be valid unless you within thirty days after receipt of this notice dispute the validity of the debt or a portion thereof. If you notify this firm in writing within the thirty day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Upon your written request within the thirty day period, this firm will provide you with the name and address of the original creditor, if it is different from the current creditor.

This firm is not a Debt Collector as that term is defined pursuant to the Fair Debt Collection Practices Act if within this jurisdiction (see Mansour vs. Cal-Western Reconveyance Corp., 618 F.Supp.2d 1178). In the event a court determination be made that this firm is a Debt Collector as that term is defined within the FDCPA, then please be advised that any information obtained will be used for the purpose of collecting a debt. However, to the extent that your original obligation or debt has been modified or extinguished by a discharge in bankruptcy, this communication is provided solely as a matter of the foreclose on the deed of trust remaining on your property and is not an attempt to collect the discharged debt obligation. The notifications provided herein do not limit or delay this firm the effect of foreclosure under the original obligation.

TIFFANY & BOSCO, P.A.
Financial Services Department
(602) 255-6035

# LEGAL DESCRIPTION TO PROPERTY

20110678671

Legal Description

Lot 333, TWELVE OAKS II, according to Book 297 of Maps, page 43, records of Maricopa County, Arizona.

Unofficial Document

Page 2 of 2

VERIFIED COMPLAINT FOR DAMAGES

## CERTIFICATION OF SERVICE

I, Mischelle Henry certify that on September 21, 2012, a copy of the Summons and

Complaint to the following:

FREDDIE MAC
8200 JONES BRANCH DRIVE
MCLEAN, VA 22102-3110

TIFFANY AND BOSCO PA
2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, AZ 85016

WELLS FARGO BANK N.A.
REGISTERED AGENT
C/0 CORPORATION SERVICE COMPANY
2338 W ROYAL PALM RD STE-J
PHOENIX, AZ 85021

EXPRESS MAIL

UNITED STATES POSTAL SERVICE

Print postage online – Go to usps.com/postageonline

TO: (PLEASE PRINT)

United States District Court of
Southern District of New York
500 Pearl St. Room 200
New York, NY   ATN: PRO SE
OFFICE

FROM: (PLEASE PRINT)

Mischelle Henry S.
5044 W Chicago circle S.
Chandler Az  85226

EB 508054961 US

RECD SEP 2 1 2012 PRO SE OFFICE

U.S. POSTAGE PAID
PHOENIX, AZ
85044
SEP 20 12
AMOUNT
$0.00
00175269-02

We Deliver!

Visit us at usps.com

EP13F

082708_EM_EP13F  OCT 2008

Mischelle K Henry Myrtle Hall
5044 W Chicago Cir S
Chandler, Az 85226
Facsimile: (480)940-2094

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2012-8894348 10/02/12 02:37 PM
1 OF 1

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MYRTLE HALL, a single woman,

MISCHELLE HENRY, a married woman

    Plaintiff,

vs.

WELLS FARGO BANK N.A., a national Bank;

FREDDIE MAC, a Virginia corporation;

TIFFANY & BOSCO, P.A. a Professional Association

    Defendant(s)

Case No.: 12CV-7214

NOTICE OF LIS PENDENS

Pursuant to A.R.S § 12-1191, Notice is hereby given that:

1.  An action has been commenced in the above-entitled court by the above- named Plaintiff against the named Defendant which action is now pending.

2.  Plaintiff has no reason to believe that the Defendant's may own or have some Interest in the property which may subject to judgment and execution by reason of the within Cause, and that such property is located at 5044 W Chicago Circle South, Chandler, Az 85226 And more particularly described as follows:

*Lot 339, TWELVE OAKS II according to book 287 of maps, page 43, records of Maricopa*

*County, Arizona instrument no. 20050377272 records of Maricopa County, Arizona,*

3.     The nature and object of the actions is for Quiet Title to property.
4.     The relief sought by Plaintiff in the action is among other relief is the Quieting
        Of Title.

Dated: October 2, 2012

_____
Mischelle K Henry, Plaintiff

_____
Myrtle Hall,          Plaintiff

1

2

3                                    **PROOF OF SERVICE**

4       **Delivered by Certified Mail:** Proof of Service by Certified Mail,

5

6               I, Mischelle K Henry, Myrtle Hall declare that I am over the age of eighteen and on

7       October 2, 2012, I served the above Complaint by placing a true copy in the United States via
        regular mail, enclosed in a sealed envelope with postage fully prepaid addressed as follows:

8       UNITED STATES DISTRICT COURT
        OF THE SOUTHERN DISTRICT OF NEW YORK
9       500 PEARL STREET
        NEW YORK, NEW YORK 10007
10

11      FREDDIE MAC
        8200 JONES BRANCH DRIVE
12      MCLEAN, VA 22102-3110

13      TIFFANY AND BOSCO PA
        2525 EAST CAMELBACK ROAD
14      SUITE 300
        PHOENIX, AZ 85016
15

16      WELLS FARGO BANK N.A.
        REGISTERED AGENT
17      C/0 CORPORATION SERVICE COMPANY
        2338 W ROYAL PALM RD STE-J
18      PHOENIX, AZ 85021

19

20                                                  Mischelle K. H
                                                    Mischelle K Henry, Plaintiff
21

22                                                  Myrtle Hall,        Plaintiff

23

24

25

                                    NOTICE OF LIS PENDENS